**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| Kerri Anisko, | Case No.: 2:16-cv-02020-JAD-GWF |
|---|---|
| Plaintiff | **Order Granting in Part Motion for Summary Judgment** |
| v. | [ECF No. 58] |
| Eldorado Development Corp., | |
| Defendant | |

Plaintiff Kerri Anisko used to sell timeshare memberships for defendant Eldorado Development Corp., also known as Eldorado Resorts Corp. She alleges that her supervisor sexually harassed her, and that her niece and boyfriend (who also worked for Eldorado) were fired in retaliation for her reporting the harassment. Anisko also alleges that Eldorado discriminated against her by failing to accommodate her disability, which she claims was caused—or at least exacerbated—by Eldorado's hostile work environment. Eldorado moves for summary judgment on all claims. I grant the motion in part, enter summary judgment in favor of Eldorado on all but Anisko's sexual-harassment claim, and order the parties to a mandatory settlement conference.

## Background[1]

**A.  The conduct that gives rise to Anisko's claims**

Anisko alleges that after she began working for Eldorado in October 2008, her project director, Dominic Taleghani, started to comment that she was beautiful, and he would say "mmmmm" when she walked by. His advances progressed, and he eventually started asking her out on dates; she repeatedly declined. Sometimes Taleghani would call Anisko, purportedly to talk about clients, but would then ask her out on a date; again, she repeatedly declined.

---
[1] These background facts are taken mostly from Anisko's complaint and affidavit to contextualize the parties' legal arguments. ECF Nos. 1-1, 67-1. Because many of these facts are disputed, they are not intended—and may not be construed—as findings of fact unless otherwise stated.

1

As time went on, Taleghani became more aggressive and would comment about having sex with her. He would try to kiss her while they rode the elevator together, and he would rub his body against hers whenever she was close to him. Anisko also claims that Taleghani would take her "off of her rotations (where she would have had the opportunity to earn commissions)" to discuss business, but that was just a ruse to get her to have breakfast or lunch with him. This unwelcome pursuit, Anisko claims, caused her extreme stress and anxiety, which led to seizures.

Sometime around March 2011, Anisko booked a condo at Eldorado's timeshare resort. One day during her shift, she needed to go to her condo to retrieve her medications. Taleghani gave her permission to leave and offered to accompany her, but she declined his offer. Taleghani followed her anyway. When she noticed, she texted her sales director, Randy Weir (who was also her boyfriend) that she was nervous. Taleghani entered Anisko's condo, took off his jacket and his belt, forced himself on her, and started kissing her neck. Weir texted Anisko at that moment to tell her that her niece (also an Eldorado employee) was coming to check on her. Anisko showed that text to Taleghani, and he left.

Anisko filed a formal sexual-harassment complaint with Eldorado's human resources department. Eldorado investigated Anisko's claims by interviewing more than 15 employees, but it eventually concluded that Anisko's allegations were unsubstantiated. Five months after Anisko filed her complaint, Eldorado fired her niece; a month after that, Weir got fired, too.

Throughout all of this, Anisko claims that her medical condition worsened, and she applied—and was approved—for intermittent leave under the Family Medical Leave Act (FMLA). She contends that her stress levels eventually became so severe that she requested—and was once again approved—for two months of block FMLA leave. Eldorado contacted Anisko multiple times during her block leave—once to tell her to that she had used up all of her eligible FMLA leave and other times to inquire about her intentions and ability to work again. Anisko never responded to any of Eldorado's communications, but she stayed on its payroll as an employee on medical leave. When Eldorado was notified in November 2011 that Anisko had applied for unemployment benefits, it concluded that she had quit and administratively separated her from employment effective December 27, 2011.

**B.     The EEOC proceedings**

Sometime before September 2011, Chase White, a representative from the EEOC, contacted Anisko to ask if she wanted to be part of a class of individuals pursuing sexual-harassment claims against Eldorado.[2] Anisko did, and she asked if she needed to file her own sexual-harassment claim with the EEOC. She declares that White never gave her a straight answer—when he responded to her at all. He finally told Anisko in February 2012 that she should file her own charge of discrimination, and she did so on April 12, 2012.[3] Anisko received a letter of determination from the EEOC on September 24, 2015.[4]

**C.     Anisko's claims and Eldorado's motion for summary judgment**

Anisko filed this employment-discrimination lawsuit against Eldorado in Nevada State Court on June 30, 2016. She pleads three claims: (1) sexual harassment/discrimination in violation of Title VII and NRS 613.330; (2) retaliation for her sexual-harassment reporting; and (3) disability discrimination and failure to accommodate her disability under the ADA and Nevada law.[5] Discovery has closed,[6] and Eldorado now moves for summary judgment on all of Anisko's claims.[7]

**Discussion**

**A.     Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

---

[2] ECF No. 67-1 at ¶¶ 32–33.

[3] ECF No. 1-1 at 14 (charge of discrimination); ECF No. 67-9 at 2 (intake questionnaire dated 2/29/12).

[4] ECF No. 1-1 at 16–17.

[5] ECF No. 1-1.

[6] ECF No. 39 at 1.

[7] ECF No. 58 (motion); 67 (response); 71 (reply). I find this motion suitable for disposition without oral argument. L.R. 78-1.

matter of law."[8] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[9] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[10]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[11] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[12]

**B.    Sexual harassment**

"Title VII of the Civil Rights Act of 1964 and Nevada's anti-discrimination law prohibit sex discrimination in the workplace."[13] "[C]ourts have read into the[se] laws a prohibition on sexual harassment."[14] There are two varieties of sexual-harassment claims: *quid pro quo* and hostile work environment.[15] To prove a sexual-harassment claim under a hostile-work-environment theory, a plaintiff must show: "(1) that he or she was subjected to verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was

---

[8] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[9] *Kaiser Cement Corp v. Fishbach & Moore, Inc.*, 793 F.2d 110, 1103 (9th Cir. 1986).

[10] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[12] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[13] *Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1103 (D. Nev. 2001) (citing 42 U.S.C. § 2000e-2; NEV. REV. STAT. § 613.330).

[14] *Id.* (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65 (1986); *Nichols v. Azteca Rest. Enter.*, 256 F.3d 864, 871 (9th Cir. 2001)).

[15] *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991). Anisko does not allege a *quid pro quo* claim.

sufficiently severe or pervasive to alter the conditions of the victim's employment as to create an abusive working environment."[16] "Summary judgment is appropriate on a sexual harassment claim only if no reasonable woman would find the defendant's conduct severe or pervasive."[17]

Anisko alleges that Taleghani's advances were so severe and pervasive that they altered the conditions of her employment at Eldorado.[18] Eldorado moves for summary judgment on Anisko's sexual-harassment claim, arguing that it is time barred[19] and that Eldorado can raise and prove the *Faragher/Ellerth* affirmative defense to absolve it from liability for Taleghani's harassment.[20] Anisko responds that her sexual-harassment claim should be equitably tolled[21] and that Eldorado can't establish a *Faragher/Ellerth* defense.[22]

### 1.   *Timeliness*

"Generally, a Title VII plaintiff must file an administrative charge with the [Equal Employment Opportunity Commission (EEOC)] within 180 days of the last act of discrimination."[23] "However, the limitations period is extended to 300 days if the plaintiff first institutes proceedings with a "state or local agency with authority to grant or seek relief from such practice."[24] "Charging parties have the benefit of the 300-day time limit for filing their

---

[16] *Switzer*, 174 F. Supp. 2d at 1103–04 (citing *Ellison*, 924 F.2d at 875–76).

[17] *Id.* at 1104 (citing *Canada v. Boyd Group, Inc.*, 809 F. Supp. 771, 776 (D. Nev. 1992)).

[18] ECF No. 1-1 at 8.

[19] ECF No. 58 at 11–12.

[20] *Id.* at 12–15.

[21] ECF No. 67 at 10–12.

[22] *Id.* at 13–18.

[23] *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081–82 (citing 42 U.S.C. § 2000e-5(e)(1)).

[24] *Id.* at 1082.

federal claims even when they have missed the state's filing deadline for submitting those claims to the state deferral agency."[25]

Eldorado argues that Anisko's claim is time barred because she filed it "325 days after she complained of Taleghani's alleged harassment on April 15, 2011"[26] and approximately 350–360 days after the incident in the condo.[27] Anisko claims that she is entitled to equitable tolling for this claim.[28] Courts consider several factors when deciding whether to equitably toll a limitations period for a discrimination claim, like whether the plaintiff diligently pursued her claims with the administrative agency, the prejudice to the defendant, the interests of justice, and whether the plaintiff reasonably relied on the agency's statements and actions.[29] "Most authorities treat the question whether equitable tolling is justified as a question of fact for resolution by the jury."[30]

There is enough evidence in this record to raise a genuine issue of material fact for equitable tolling. Anisko declares that she diligently pursued her claim with the EEOC as a class member asserting claims of sexual harassment against Eldorado.[31] The EEOC letter corroborates the notion that the agency was evaluating claims against Eldorado on behalf of a class.[32] She

---

[25] *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999) (citing *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 123 (1988)).

[26] ECF No. 58 at 10, ¶ 70.

[27] *Id.* at 12.

[28] ECF No. 67 at 10 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

[29] *Roberts v. Clark Cnty. Sch. Dist.*, 2016 WL 6986346, at *2 (D. Nev. Nov. 28, 2016) (citing *City of N. Las Vegas v. State Local Gov't Employee-Mgmt. Relations Bd.*, 261 P.3d 1071, 1077 (Nev. 2011); *Copeland v. Desert Inn Hotel*, 673 P.2d 490, 491 (Nev. 1983)).

[30] *Huss v. City of Huntington Beach*, 317 F. Supp. 2d 1151, 1162 (C.D. Cal. June 14, 2000) (citing *Heideman v. PFL, Inc.*, 904 F.2d 1262, 1266 (8th Cir. 1990); *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986); *Ott v. Midland-Ross Corp.*, 600 F.2d 24 (6th Cir. 1979); *but cf. Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C.Cir. 1998)).

[31] ECF No. 67-1 at 6, ¶¶ 32–34.

[32] *See* ECF No. 1-1 at 16 ("The Commission's investigation revealed that Charging party and a class of similarly situated individuals were discriminated against in violation of Title VII when unlawful sexual harassment occurred, for which there was no prompt and corrective action taken by Respondent.").

6

was not represented by a lawyer, and when she asked Mr. White at the EEOC whether she should file her own charge of discrimination, she didn't get a straight answer until February 2012.[33] She filed her own claim two months later. In light of these facts, the interests of justice may justify tolling here, particularly in light of the severity of Anisko's allegations. And although Eldorado would be prejudiced by equitable tolling, a jury may find that the other factors outweigh it. So, I find that genuine issues of fact regarding Anisko's entitlement to equitable tolling preclude me from entering summary judgment in favor of Eldorado based on timeliness grounds.

### 2. *Faragher/Ellerth* affirmative defense

The *Faragher/Ellerth* defense absolves an employer of vicarious liability for a supervisor's harassment "if it is able to establish that it acted reasonably and that its injured employee acted unreasonably."[34] The defense comes from a synthesis of two Supreme Court decisions: *Burlington Industries, Inc. v. Ellerth*[35] and *Faragher v. City of Boca Raton*.[36] Under it, an employer may not be liable for a hostile-work-environment claim if: (1) the employer exercised reasonable care to prevent or correct promptly any discriminatory conduct; and (2) the employee unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer, or otherwise unreasonably failed to avoid harm.[37]

Eldorado contends that it is entitled to summary judgment because it can plead and prove the *Faragher/Ellerth* defense here.[38] Anisko responds that this affirmative defense is unavailable to Eldorado because she suffered a tangible adverse employment action at the hands of the

---

[33] *Id.*

[34] *Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1167 (9th Cir. 2003).

[35] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

[36] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

[37] *Ellerth*, 524 U.S. at 764–65; *Faragher*, 524 U.S. at 807–08; *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001).

[38] ECF No. 58 at 12–15.

7

harassing supervisor.[39] A tangible employment action is one that imposes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[40] "Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control."[41] "Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates."[42]

Anisko contends that the tangible employment action she suffered was that Taleghani's harassment kept her from earning stock in the company. She explains that Eldorado employees receive a vested interest in a company stock account based on the employee's years of service. A year of service at Eldorado is any year in which the employee works at least 1,000 hours.[43] Employees who work fewer than three years of service do not have any vested interest in their company stock account, but once an employee works three years of service, she receives a 20% vested interest.[44]

Anisko claims that she was 76 hours short of achieving the three-years-of-service mark and may have achieved it had Taleghani not forced her to have off-the-clock meals with him.[45] Although a few off-the-clock sessions would likely not be significant enough to effect a tangible employment action, the aggregate effect of all of many off-the-clock meals might be. Whether it was Taleghani's actions that prevented Anisko from achieving this employee benefit is a genuine issue of fact that I cannot decide on summary judgment. And this record precludes me from

---

[39] ECF No. 67 at 13 (citing *Ellerth*, 524 U.S. at 761–62).

[40] *Ellerth*, 524 U.S. at 761.

[41] *Id.* at 762.

[42] *Id.*

[43] ECF No. 67-12.

[44] *Id.*

[45] ECF No. 67 at 27.

granting summary judgment in Eldorado's favor based on the *Faragher*/*Ellerth* affirmative defense.

Eldorado also must show that there is no genuine dispute that Anisko was unreasonable in reporting Taleghani's sexual harassment.[46] This, it cannot do on this record. "[A] sex-blind reasonable person standard tends to be male-biased and tends to systematically ignore the experiences of women."[47] So courts consider whether a reasonable woman would have waited a similar amount of time before reporting the harassment.[48] Anisko declares that she was afraid to report the sexual harassment because she didn't want to lose her job.[49] She also declares that she knew of two other Eldorado employees were fired for complaining about Taleghani, and she had heard rumors about others as well.[50] This evidence precludes Eldorado from establishing that it was unreasonable as a matter of law for Anisko to wait as long as she did to report Taleghani's harassment. I therefore find that genuine issues preclude summary judgment on Anisko's sexual-harassment claim.

## C. Retaliation

In her second claim for relief, Anisko alleges that Eldorado retaliated against her for filing a sexual-harassment claim with the EEOC by: (1) firing her niece and boyfriend; and (2) constructively discharging her by failing to accommodate her disability.[51] Eldorado moves for summary judgment on these retaliation theories, arguing that Anisko failed to exhaust her administrative remedies before pleading this retaliation claim and that she can't show the requisite causation to support it.[52]

---

[46] *Ellerth*, 524 U.S. at 764–65; *Faragher*, 524 U.S. at 807–08; *Swinton*, 270 F.3d at 802.

[47] *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991).

[48] *Swinton*, 270 F.3d at 801.

[49] ECF No. 67-1 at 3, ¶ 5.

[50] *Id.* at ¶ 6.

[51] ECF Nos. 1-1 at 9; 67 at 21–22.

[52] ECF No. 58 at 15–17.

### *1. Exhaustion*

"Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'"[53] "The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation."[54] Whether the claimant checked the appropriate boxes on the EEOC intake form is not dispositive of that scope.[55]

Anisko did not check the "retaliation" box on her EEOC charge-of-discrimination intake form,[56] but she did allege in that form that she "finally resigned after [Taleghani] fired [her] nieces [sic] and Randy Weir for sexual harassment."[57] The context of that sentence suggests that Anisko meant that Taleghani fired her loved ones because she filed a discrimination claim against him.[58] Plus, the EEOC's investigation covered Anisko's retaliation claim.[59] So I find that Anisko sufficiently exhausted her claim that her loved ones were fired in retaliation for her report of harassment.[60]

---

[53] *Green v. Los Angeles Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989).

[54] *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (citing *Green*, 883 F.2d at 1476); *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994).

[55] *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 645–46 (9th Cir. 2003).

[56] ECF No. 67-9 at 3.

[57] *Id.* at 12.

[58] *See generally id.*

[59] *See* ECF No. 67-10 at 2 ("Additionally, information and documents that are not related to Ms. Anisko's claims of individual harassment *and retaliation* are not relevant or material to the investigation of her Charge." "More importantly, [the requested document] is not designed to obtain information that is relevant or material to the allegations made by Ms. Anisko of individual harassment/ discrimination *and retaliation* . . . .") (emphasis added).

[60] The United States Supreme Court recognizes that a third party may be terminated as retaliation against a first party. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011) ("Rather, Title VII's antiretaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired. . . . We expect that firing a close family member will almost always meet the *Burlington* standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so, but beyond that we are reluctant to generalize.") (internal citations omitted).

I cannot say the same for her theory that her constructive discharge was retaliation for her reporting, however. The allegations in Anisko's EEOC intake form are silent about a constructive discharge due to a failure to accommodate.[61] So I find that she has not exhausted the portion of her retaliation claim based on that theory, and I grant summary judgment in favor of Eldorado on that theory only.

### 2. *Causation*

To prove retaliation, a plaintiff must show three things: (1) she engaged in a statutorily protected activity; (2) she was discharged or suffered some other adverse employment decision; and (3) there is a causal connection between the two.[62] To establish that causal connection, the plaintiff has to establish that "the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision."[63] This may be done through close temporal proximity between the protected activity and the adverse employment action.[64]

Eldorado argues that Anisko cannot establish that the firing of her niece and boyfriend was retaliation for her report.[65] Anisko suggests that the timing of an adverse action alone can give rise to an inference that it was retaliatory, and that the firing of her loved ones five and six months, respectively, after her report of sexual harassment, does just that.[66]

There is no bright-line rule for determining whether the timing of an adverse employment action gives rise to an inference of retaliation. In *Clark County School District v. Breeden*, the United States Supreme Court recognized that "the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as

---

[61] ECF No. 67-9.

[62] *O'Day v. McDonnel Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996).

[63] *Univ. of Texas Sw. Medical Center v. Nassar*, 570 U.S. 338, 343 (2013).

[64] *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731–32 (9th Cir. 1986).

[65] ECF Nos. 58 at 16–17; 71 at 14–15.

[66] ECF No. 67 at 21.

sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"[67] The Court found that a 20-month gap "suggests, by itself, no causality at all," and cited to other cases in which courts reached the same conclusion for three- and four-month gaps.[68] The same is true of the timing here. Anisko offers no other evidence that suggests a causal link between her report and her niece and boyfriend's termination, and this significant lapse of time suggests "no causality at all."[69] I thus find that Anisko cannot establish the critical element of causation for her retaliation claim, and I grant summary judgment on this claim in favor of Eldorado.

### D. Disability discrimination

Anisko's third cause of action alleges that she was discriminated against in violation of the Americans with Disabilities Act (ADA) because Eldorado failed to provide reasonable accommodations for her disabilities.[70] "[T]he ADA says that 'discrimination' includes an employer's 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business."[71] "[O]nce an employee requests an accommodation . . . the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation."[72] And when the interactive process breaks down, the employer is only liable for failing to provide reasonable accommodations if it caused the breakdown.[73]

---

[67] *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

[68] *Id.* (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) and *Hughes v. Derwinski*, 967 F.2d 1168 (7th Cir. 1992)).

[69] *Id.*

[70] ECF No. 1-1 at 10–11.

[71] *EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010) (internal quotations and citations omitted).

[72] *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

[73] *Id.*

There is no dispute that Anisko requested—and received—intermittent- and block-leave accommodations for her medical condition. Anisko claims that she was constructively discharged because Eldorado contacted her during her leave to inquire about her intention and ability to return to work.[74] There is no dispute that Anisko did not respond to any of Eldorado's communications. Anisko argues that Eldorado had no right to contact her and ask about her medical condition and that its constant attempts at communication were causing her more stress and preventing her from getting better.[75]

But 42 U.S.C. § 12112(d)(4)(B) allows an employer to "make inquiries into the ability of an employee to perform job-related functions,"[76] and it appears on this record that Eldorado was doing nothing more than that. Anisko admits that Eldorado called roughly once a week while she was on medical leave to ask about her ability to return to work.[77] Because it is undisputed that Anisko failed to return Eldorado's calls, the only reasonable inference is that the interactive process broke down because of Anisko—not Eldorado. I therefore find that Anisko cannot prove her ADA reasonable-accommodation claim, so I grant summary judgment on her third cause of action in favor of Eldorado.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Eldorado's motion for summary judgment **[ECF No. 58] is GRANTED in part and DENIED in part**: summary judgment is granted in favor of Eldorado and against Anisko on her second and third causes of action; this case proceeds to trial only on Anisko's first cause of action (sexual harassment).

. . .

---

[74] ECF No. 67 at 25.

[75] *Id.* at 22–25.

[76] 42 U.S.C. § 12112(d)(4)(B).

[77] ECF No. 67 at 24.

IT IS FURTHER ORDERED that this matter is **REFERRED** to a magistrate judge for **a MANDATORY SETTLEMENT CONFERENCE** and that the deadline to file the joint pretrial order is tolled until ten days after the settlement conference.

Dated: September 16, 2018

_____
U.S. District Judge Jennifer A. Dorsey